ATTORNEY GENERAL, *ex rel.* MOORE, *v.* AMERICAN EX-
PRESS CO.

1. COURTS—JURISDICTION—WAR-REVENUE TAX.

   State courts have jurisdiction of a proceeding to compel an ex-
   press company to receive and forward goods tendered to it
   by a patron, which involves the determination of the question
   whether the company or the patron must pay for the revenue
   stamp required by the federal statute to be affixed to the com-
   pany's receipts.

2. CORPORATIONS—NEGLECT OF PUBLIC DUTIES—MANDAMUS.

   *Mandamus* will lie by the attorney general, on the relation of an
   individual, to compel an express company to perform the
   duties imposed upon it by law with reference to the receiving
   and forwarding of goods.

3. SAME—JOINT-STOCK ASSOCIATIONS.

   Circuit Court Rule No. 46, giving circuit courts jurisdiction in
   *mandamus* proceedings involving the action of any " private
   corporation," uses the term " corporation " as embracing joint-
   stock associations, and other associations of a corporate
   nature.

4. EXPRESS COMPANIES—REVENUE STAMPS—LIABILITY.

   Under the war-revenue act of June 13, 1898, making it the duty
   of express companies to issue to every shipper or consignor
   a bill of lading or other evidence of receipt, to which there
   shall be attached a revenue stamp of the value of one cent, and
   prescribing a heavy penalty for failure to issue such bill, the
   express company, and not the shipper, has the duty of paying
   for the stamp.

5. SAME—EVASION OF DUTY—INCREASE OF RATES.

   The duty resting upon the company under said act cannot be
   evaded by it, and the burden shifted to the shipper, by adding
   in each transaction, to its former fixed charges, the cost of the
   stamp, under the pretext of establishing new rates by virtue
   of its authority to prescribe reasonable regulations for its
   business.

6. SAME—MANDAMUS BY ATTORNEY GENERAL—PARTIES INTERESTED.

   A writ of *mandamus* issued in a proceeding instituted by the
   attorney general, on the relation of a shipper, to compel an ex-

press company to receive goods for transportation without requiring the consignor to pay the stamp duty imposed by the war-revenue act of June 13, 1898, should not be limited to the parties to the record, but may run against the express company for the protection of the shippers within the State, where it definitely appears from the petition and answer that the requirement complained of is the uniform practice of the company.

*Certiorari* to Wayne; Frazer, J.    Submitted November 15, 1898.    Decided December 6, 1898.

*Mandamus* by Fred A. Maynard, Attorney General, on the relation of George F. Moore and others, to compel the American Express Company to receive and forward goods without requiring the payment of the stamp tax by the consignor.    From an order granting the writ, respondent brings *certiorari*.    Affirmed.

*Warner, Codd & Warner*, for relators.

*Wisner & Harvey* (*H. C. Wisner*, of counsel), for respondent.

LONG, J.    The attorney general, on the relation of various merchants in the city of Detroit, filed a petition in the Wayne circuit court for a *mandamus* to compel the respondent, its officers, agents, and servants, to receive, accept, transmit, and deliver any and all goods, wares, and merchandise duly offered and tendered to it, in boxes, packages, etc., for transportation, when the fees and charges for such goods shall be paid or tendered, and to issue to the shippers or consignors throughout this State a bill of lading or evidence of receipt for each shipment, with the stamp duly attached thereto and canceled by it, as provided by the act of Congress of June 13, 1898, entitled "An act to provide ways and means to meet war expenditures, and for other purposes," without requiring of consignors or shippers said stamp, or the value thereof. The court below issued an order to show cause, and, a

return having been made to such order by the respondent, the court granted the writ as prayed. The case comes into this court by *certiorari*.

The respondent is a joint-stock association organized and existing under the laws of the State of New York, and having its principal business office in the city of New York. It is a common carrier, transacting express business, so called, and engaged in the business of receiving, carrying, forwarding, and delivering goods, wares, and merchandise. It is doing business in this State in pursuance of a license issued by the state treasurer under and by virtue of chapter 103, 1 How. Stat. The petition shows that the respondent, upon delivery of packages to it for transportation as a common carrier, refused to accept goods for transportation unless the shipper or consignor would pay for the stamp provided by said act of Congress; that this refusal was general throughout the State, by all its officers and agents; and that it has 489 agencies within this State. The respondent, in its answer filed in the court below, admits many of the allegations in the petition, but it alleges that in the act Congress has refrained from providing, as between shipper and carrier, which shall bear the burden of the tax, thereby intending to leave it a matter of adjustment between the parties, conditioned, however, that the tax must be paid; that the respondent, being organized and having the right, under the statutes of this State, to carry on an express business, becomes vested with the right to regulate the carrying on of its business by reasonable rules and regulations, and to fix, and insist upon the payment of, such rates of transportation as it deems best, provided the same are not unreasonable in amount nor in manner of payment; that, the enactment of the stamp act referred to being an important change in the then condition of things, it becomes necessary for respondent to change and regulate its method of transacting business, and to re-establish its rates of transportation, so that it may meet the change in a way to prevent its resources from being so depleted as to

weaken its financial condition; that respondent therefore decided to raise, and has raised, its rates of transportation to an amount reasonable and just, and only necessary to meet the change of conditions made by the act, and save itself from great loss of revenue and profits as compared with its earnings before the passage of the act, which it has the lawful right to do; that under its right to regulate its manner of doing business, and with view to accommodating the public, so far as paying said increase of rates, respondent has accorded to responsible shippers the right to pay such increase (either using a stamp or money for the purpose) upon delivery of the goods, and the privilege of paying the balance of the rate of transportation at the point of delivery to the consignee.   It is admitted that this change in the manner of doing business in effect throws the burden of the tax upon the shipper, but it is claimed that such effect is in accordance with the principle of taxation that the burden shall be distributed equitably among the many, rather than be cast upon the few; and it is claimed that should the respondent be compelled to pay the tax, which would amount to many thousands of dollars, without the right to guard against the effect of such expenditure in the manner adopted by it in raising its rates of transportation, as has been done, its financial condition would be greatly weakened.

In the answer it is also alleged that, in any case of pretended violation of its duties as set forth in the petition, it was not pretended or alleged that the charges were paid or tendered; but it appears from the opinion of the court below that this point was abandoned on the argument there, and the case was left to the court below to decide the same as if the charges had been tendered.   That question will not, therefore, be discussed here, but it will be taken as settled that the charges were so tendered.

The act of Congress (30 U. S. Stat. at Large, chap. 448) provided:

"SEC. 6. That on and after the first day of July, 1898,

there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this act, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, shall be written or printed, by any person or persons or party who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, signed, or issued, the several taxes or sums of money set down in figures against the same, respectively, or otherwise specified or set forth in the said schedule.   *   *   *

"SEC. 7. That if any person or persons shall make, sign, or issue, or cause to be made, signed, or issued, any instrument, document, or paper of any kind or description whatsoever, without the same being duly stamped for denoting the tax hereby imposed thereon, or without having thereupon an adhesive stamp to denote said tax, such person or persons shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall pay a fine of not more than one hundred dollars, at the discretion of the court, and such instrument, document, or paper, as aforesaid, shall not be competent evidence in any court."

Schedule A of said act, among other things, provides as follows:

"*Express and Freight:*  It shall be the duty of every railroad or steamboat company, carrier, express company, or corporation or person whose occupation is to act as such, to issue to the shipper or consignor, or his agent, or person from whom any goods are accepted for transportation, a bill of lading, manifest, or other evidence of receipt and forwarding, for each shipment received for carriage and transportation, whether in bulk or in boxes, bales, packages, bundles, or not so inclosed or included; and there shall be duly attached and canceled, as is in this act provided, to each of said bills of lading, manifests, or other memorandum, and to each duplicate thereof, a stamp of the value of one cent: *Provided*, that but one bill of lading shall be required on bundles or packages of newspapers when inclosed in one general bundle at the time of shipment.   Any failure to issue such bill of lading, manifest, or other memorandum, as herein provided, shall subject such railroad or steamboat company, carrier, express company, or corporation or person to a penalty of fifty

dollars for each offense; and no such bill of lading, manifest, or other memorandum shall be used in evidence unless it shall be duly stamped as aforesaid."

The relators contend that the duty to pay this tax is cast upon the respondent by the terms of the act, and that, when the proper charges were tendered for the transportation, it became the duty of the respondent to undertake the carriage, and that respondent has no right, under the guise or pretense of raising its rates, to cast this burden upon the public.

1. It is contended by counsel for respondent that the question is one over which the federal courts have exclusive jurisdiction. We cannot agree with counsel in this contention. This is not an action for the recovery of the penalty which the statute imposes for failure to issue the bill of lading, but a proceeding for an order to compel the respondent, a common carrier, to accept and carry the goods tendered it for shipment when the regular charges are paid or tendered. The respondent is a common carrier, and as such it is its duty to receive for carriage and to carry the goods of any person tendered to it for transmission, provided they are such as it holds itself out as willing to carry, and the party tendering them offers to pay its proper charges. This duty is imposed by law. 5 Am. & Eng. Enc. Law (2d Ed.), 158, 159. The respondent is permitted to do business in this State, though not incorporated under the laws of the State, but it is subject to all the duties and obligations which the law imposes upon common carriers; and for a refusal to carry goods when tendered, and charges paid, the State courts may be appealed to for redress. This matter is entirely between the shippers and the company. This view is held by the attorney general of the United States in a recent opinion, in which he says:

"In controversies arising between shippers and express companies as to which one shall be required to bear the expense of the stamp, the general government has no direct concern under the war-revenue law."

The general government, it appears, refuses to proceed against express companies for a violation of the act, unless it be made to appear that the company has accepted goods for shipment, and has refused to attach the stamp to the receipt given therefor; that is, the general government may and will prosecute for the penalty fixed by the act when goods are received and shipped without the company's affixing the revenue stamp to the receipt or bill of lading, but it will not interfere between the public and the company for refusal to carry. The commissioner of internal revenue on August 1, 1898, decided that the aggrieved parties,—that is, the parties offering goods for shipment,—when the company refuses to carry without payment of the stamp, must depend for redress upon the common or the statute law of the State defining the obligations of common carriers.

2. Unless, therefore, the shipper should pay the tax, the company is bound to carry, upon the payment or tender of the regular charges. The company is vested with the exercise of public functions under the permissive power of the State; and, when it refuses to discharge the duties imposed by law, *mandamus* is the proper remedy to compel the discharge of that duty. The American courts have taken such occupations under their control, and, regarding them as public agencies, have enforced the common law or the statutory law against them, and have not hesitated to grant the writ of *mandamus* against any party who, having assumed public duties, refuses to discharge them. *Haugen* v. *Water Co.*, 21 Or. 411; *Olmsted* v. *Aqueduct Proprietors*, 47 N. J. Law, 311.

But counsel contend, further, that the power given to the circuit courts to issue *mandamus* rests upon Cir. Ct. Rule No. 46, which provides, "Circuit courts shall have jurisdiction within their respective counties in all *mandamus* proceedings involving the action of any officer or board of any county, township, city, or school district, or of the common council of any city or village, and the action of any private corporation or officer or board thereof," and that,

this rule not having included joint-stock associations, the circuit courts are not vested with power to issue the writ. "Corporations" and "associations" are convertible, and often used as synonymous, terms.   There is no reason for any distinction or discrimination between corporations and joint-stock associations, in applying this rule.   It is the intent of the rule to place all *mandamus* proceedings of this character primarily in the circuit courts.   In reference to the assessment and collection of specific taxes, the legislature of this State has recognized the terms as convertible. Section 1255, 1 How. Stat., provides:

"The term 'corporation,' as used in this act, shall be construed to include all associations and joint-stock companies having any of the powers or privileges of corporations not possessed by individuals or partnerships."

In *Maltz* v. *American Express Co.*, 1 Flip. 611, it was held that, whether a corporation or not, a joint-stock association is a distinct legal entity, and that so long as this fact exists, and it possesses the attributes of perpetual succession, and the capacity of suing and being sued, it is a juridical person, and must be regarded as a citizen of the State which creates it; and it is wholly immaterial whether it be termed an "association," "joint-stock association," or "guild."

3. The main question in the case relates to the construction to be placed upon the act in question.   By the act every express company is compelled to issue to every shipper or consignor, etc., a bill of lading for each shipment received for carriage, to which bill of lading and duplicate thereof there shall be attached and canceled a stamp of the value of one cent.   The law therefore imposes upon the carrier the obligation to issue the receipt. With this the shipper has nothing to do.   He delivers the package to the company, and pays or tenders the usual charges.   This ends the shipper's duty, and the law then compels the carrier to issue the receipt or bill of lading. This bill must be stamped, and the stamp canceled.   It is

evident that it is as much the duty of the company to place the stamp upon the receipt and cancel it as it is to issue the receipt. This duty is made more apparent by the fact that the act further provides that failure to issue the receipt makes the carrier so failing amenable to a heavy penalty. But it is contended by counsel, in a brief filed with this court, that the penalty was directed, and intended by Congress to be directed, to the failure to issue the receipt, and nothing more, leaving the question of the stamping of the same to be settled by the parties. It seems to us that what is meant by this clause is that the receipt must be such as is provided,—that is, a receipt bearing the proper stamp,—and that the penalty is provided for such a failure as this. It is, and always has been, the custom of express companies to issue receipts for goods delivered for shipment. The only interest the government has or can have is the affixing and cancellation of the stamp to aid it in its war revenues. We are therefore led to the conclusion that the duty to issue the receipt, and the penalty prescribed for the failure to do so, imply that it is to be a receipt which would bring the government the revenue provided. Therefore the act makes it the duty of the company to affix the stamp.

4. It is contended, however, that the company has the right to make new regulations and establish new rates to meet this burden. It is conceded that the effect of this is to throw the burden upon the shipper. It is apparent upon the face of this proceeding that the very purpose of this change in the regulations and the increase of rates is to avoid the payment of the tax, and thus cast upon the shippers the burden which the act of Congress puts upon the company. This is but an evasion and a subterfuge to avoid the terms of the act. The pretense that raising the charges on each package just one cent, without reference to the distance to be carried, the weight or bulk of the package, and the former fixed charges, is a regulation of charges, can hardly be treated seriously. If the charges established were regarded as too small, it would seem that

the action would have been to make the additions in some manner to correspond to the length of carriage, weight, etc.; but to add one cent to every charge for carriage bears upon its face evidence of the attempt to evade the act. Where the charge established was 25 cents it is now 26 cents; where it was 50 cents it is now 51 cents; where $1 it is now $1.01; and so on, adding just one cent to each charge. It cannot be that this was done because the charge was too low for each carriage, however long the distance, or however weighty the article. The statement of this claim is its own refutation. We are aware that Judge Lacombe, of the United States circuit court of New York, has held the other way upon this question, in the case of *Crawford* v. *Hubbell*, 89 Fed. 961, as also the United States district courts of North Carolina and California; but we are unable to agree with those cases. Judge Tuley, in the superior court of Cook county, Ill., has, however, held in accordance with our views here expressed. It is said by him that "it is not in fact a revision or increase of rates, but an arbitrary attempt of the company to make the shippers pay a tax which the law requires the company to pay. The court must regard the substance of the contention, and not the pretense." *People, ex rel. Western Wheel Works,* v. *United States Express Co.,* 30 Chicago Legal News, 408.

5. It is further contended that the order of the court below is too broad; that the writ should run against the company only so far as to affect the parties to this record. The petition is filed by the attorney general of the State, in which it is stated that these cases constitute but few of the many of like character, and are presented for the purpose of representing the uniform course of practice of the respondent company. This is not denied by the answer, but, on the contrary, the claim is made therein that the regulation of its business affairs, and the change in its rates of transportation, throw the burden of the tax upon the shipper, by force of circumstances. It is thus apparent that the attorney general's petition, taken with the answer

of the respondent, is sufficient to show that the respondent is attempting to enforce this rule throughout the State in its dealings with all its customers; and the case involves the question whether the order should be broad enough to reach the rights of all classes who are shippers within the State. · We think the order should not be modified as claimed.

The order of the court below must be affirmed.

The other Justices concurred.