# United States Express Co. v. People ex rel. Western Wheel Works.

1. REVENUE STAMP—*To be Affixed to Receipts by the Carrier.*—Under the Act of Congress to provide ways and means to meet war expenditures, etc., approved June 13, 1898, it is the duty of common carriers, upon receiving packages for transportation, to issue receipts and bills of lading therefor and to affix thereto, without demanding or receiving from the shipper, the revenue stamp required by such act.

2. SAME—*To be Affixed by the Carrier.*—The revenue stamps upon receipts and bills of lading issued by express companies upon receipt of packages and parcels for transportation, are to be affixed by the companies and not by the shipper.

3. COMMON CARRIERS—*Right to Revise Charges.*—When the increased cost of handling and transportation demand it, a common carrier has the right to revise and increase his rates; but he can not arbitrarily do so in order to make his customers or the public pay a tax imposed by law upon him or upon the business transacted by him.

4. SAME—*Requiring the Shipper to Pay for the Stamp not a Revision of Rates.*—A rule of an express company requiring shippers, in addition to its former rates, to pay the stamp tax upon its receipts and bills of lading, is not a revision or increase of rates, because it adds to the former rate the same amount in each transaction.

5. STAMP TAX—*Necessarily Arbitrary.*—The stamp tax is necessarily an arbitrary one. It may be imposed by the government without regard to value or the amount of the transaction or the cost or expense attending it.

Mandamus, to compel an express company to receipt for carriage and transportation of packages. Trial in the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Hearing and decree for relator; appeal by respondent. Heard in the Branch Appellate Court at the October term, 1898. Affirmed. Opinion filed March 14, 1899.

U. S. Express Co. v. People.

WILLARD & EVANS, attorneys for appellant; LAWRENCE MAXWELL, JR., of counsel.

Even if the act in terms imposes the tax upon the express company, the latter may, nevertheless, lawfully require its reimbursement as a condition of accepting goods for transportation.    Jones v. Van Benthuysen, 103 U. S. 87, 88; Seligman's Essays on Taxation, p. 204; Pomeroy's Constitutional Law, p. 230; John Stuart Mills' Principles of Political Economy, Vol. 2, p. 415; Gregg v. Sanford, 65 Fed. Rep. 151, 154 (C. C. A.); Platt v. Colvin, 50 Ohio St. 703.

The act does not impose the tax upon the express company or its business, but merely upon the transaction of shipment, and in terms provides that it may be paid by either party to the transaction.    Act of Congress of June 13, 1898, C. 448, 30 Stat., pp. 451–459; Congressional Record, Vol. 31, p. 5627.

The writ of mandamus will not be awarded in any case unless the relator shows a clear legal right.    It will never be granted in a case doubtful either as to law or fact; and this rule is not changed by the Illinois statute on mandamus.

Questions involving reasonableness of rate can not be determined in this action.    Nebraska Tel. Co. v. State, 76 N. W. Rep. 171.

MORAN, KRAUS & MAYER, attorneys for appellee.

The duty of affixing and canceling the stamp, and the liability to the penalty for failing to do so, are clearly and expressly imposed on the express company.

In construing the act of 1866, Commissioner of Internal Revenue Rollins said:

It is the duty of the maker of an instrument to affix the stamp thereto, and to cancel the same in the manner required by law.    (4 Int. Rev. Rec., p. 61; 4 Int. Rev. Rec. p. 164.)

That the execution of the receipt includes, as a necessary act to execution, the affixing and cancellation of the stamp,

appears from the opinion of the Supreme Court in Latham v. Smith, 45 Ill. 25, 26.

Speaking of the stamp, the court says:

"If necessary, the note was as incomplete (without the stamp) as if it had lacked the maker's signature, and the attaching and canceling it, without authority, would be as unauthorized as writing the maker's name to the instrument without authority. If that is important, it is the last act essential to its validity and is as much the act of the maker as is the signature." Myers v. Smith, 48 Barb. (N. Y.) 614.

When the legislature puts a construction on an act, a subsequent cognate enactment in the same terms will, *prima facie*, be understood in the same sense. Endlich on Interpretation of Statutes, Sec. 365; Black on Interpretation of Laws, 161.

The common law liability of an express company does not rest in contract, but is imposed upon it by the law. Hence, when goods are offered the company for transportation, it must receive them on being paid or tendered the reasonable rates for carriage. Kirby v. Adams Ex. Co., 2 Mo. App. 369; So. Ex. Co. v. Moon, 39 Miss. 822; U. S. Ex. Co. v. Hutchins, 67 Ill. 348; Pacific Ex. Co. v. Shearer, 160 Ill. 215; Buckland v. Adams Ex. Co., 97 Mass. 124; Bank of Kentucky v. Adams Ex. Co., 93 U. S. 174.

PER CURIAM.

This appeal is from an order of the Circuit Court directing that a peremptory writ of mandamus issue to the United States Express Company, a carrier, commanding it to receive for carriage and transportation the specific package or parcel mentioned in the petition for the writ, and all other packages or parcels that the relator may, from time to time, tender to said company for carriage and transportation in the usual course of its business as a carrier, provided the relator shall tender payment to said company of its regular, usual and reasonable transportation charges therefor, without demanding or receiving from the relator the revenue stamp, or payment of the value thereof required by the act of Congress to provide ways and means to meet

war expenditures, etc., approved June 13, 1898, to be affixed to bills of lading or receipts issued by said company.

The real object of the proceeding, and the specific issue involved is, who is to pay the tax of the cost of the stamp—the carrier or the shipper?

And that question does not in any manner involve the right of the shipper and carrier to bargain as they may please in reference to casting the burden of the tax upon one or the other, concerning which power and right to contract there could hardly be a question, and with which the United States has no direct concern. It is only as to which of the two shall bear it when they do not agree.

The act of Congress does not affect the common law duty and right of carrier and shipper, as between themselves. It simply superadds to the unaltered common law duty of the carrier to receiver and carry, the requirement that it shall issue a receipt or bill of lading for whatever package or parcel it does receive to carry, and that such receipt shall have affixed to it a revenue stamp of the value of one cent. By every rule of construction and inference, the duty to furnish and pay for the stamp required to be put upon the receipt, which must, under the law, be issued, devolves upon the carrier, who is required to issue it. The carrier must issue the receipt; it can not issue it unless stamped, without subjecting itself to a penalty many times in excess of the value of the stamp. It is for the carrier's benefit that the stamp must be affixed and canceled, for without the stamp it can not do business. The shipper's rights under the law are not dependent upon the issuance of a receipt to him. As to him it imposes no burdens and gives no rights, and is not even necessary as evidence; it is a mere convenience as to him.

And, besides, it is manifest from the whole act and the purposes it was enacted to aid in accomplishing, that the legislative intent in enacting it was to place a tax upon the business of the carrier, and this the carrier should not be permitted to avoid by forcing its share of lawful burden upon an unwilling shipper.

In order to speed the cause, we refer to the opinion of Judge Tuley delivered when the case was before the Circuit Court, which shows in detail most of the main features of the case that govern our decision, omitted in what we have said. In addition to that opinion, we refer to the case of the Attorney General ex rel. v. American Express Co., decided by the Supreme Court of Michigan, December 6, 1898 (77 N. W. Rep. 317).

Judge Tuley's opinion is as follows:

" The relator in this case, the Western Wheel Works, an Illinois corporation, engaged in business in Chicago, was in the habit of shipping by the defendant, the United States Express Company, a large number of packages daily, sometimes amounting to between one and two hundred a day.

About the 8th of June, 1898, and after the passage of the act of Congress known as the ' War Revenue Act,' it took a package to the office of the express company for shipment to a point called Pine Bluff, in the State of Arkansas. The rate charged by the express company had been, as appears by the evidence, forty-five cents for a package of that character for the last six or eight years. When the package was tendered to the company, the evidence shows that the agent started to fill out a blank bill of lading or receipt for the shipment, and, observing that the party making the shipment counted out forty-five cents to pay the charges, the agent demanded that he should pay in addition one cent of a revenue stamp to be attached to the bill of lading, and upon his refusal to do so, the company, by its agent, refused to accept the parcel for transportation.

There is some little difference in the evidence as to what occurred at the time of the presentation of the package, but there is no doubt of this fact, that the agent refused to receive the package unless the one cent for the revenue stamp was paid in addition to the forty-five cents, which is the material fact in the case.

Thereupon this petition in the name of the people on relation of the Western Wheel Works, was filed.

The company filed an answer denying in general all the allegations in the petition.

The question involved in this case is upon whom, under the act of Congress, is the obligation imposed to pay the stamp tax—the express company or the shipper.

That depends, first, upon the construction to be placed primarily upon the portion of the stamp act referring to

and headed 'Express and Freight,' taken, of course, in connection with all other relative provisions of the act of Congress.

The section refers to express companies, railroad corporations, persons, etc,, engaged in the business of carriers for hire, and requires them to issue bills of lading, etc., or other evidence of the receipt of the property for each shipment received. It is conceded that the language is sufficiently broad to cover express company receipts, which are, in fact, nothing more than bills of lading. The section as applicable to express companies, eliminating what refers to other companies, would read as follows: 'It shall be the duty of every express company * * * to issue to the shipper * * * or person from whom any goods are accepted for transportation, a bill of lading *. * * for each shipment received for carriage or transportation * * * and there shall be duly attached and canceled as in this act provided to each of said bills of lading * * * a stamp of the value of one cent. * * * Any failure to issue such bills of lading * * * as herein provided shall subject the express company * * * to a penalty of fifty dollars for each offense, and no such bill of lading * * * shall be used in evidence unless it shall be duly stamped as aforesaid.'

The act of Congress referred to is entitled: 'An Act to provide ways and means to meet war expenditures and for other purposes.'

It aims to raise revenue to meet war expenditures by taxation.

The Supreme Court of the United States, in what is called the Foreign Bond case, 15th Wallace, uses this language in regard to the subject-matter of taxation: 'The subjects of taxation are persons, property and business. Whatever form taxation may assume, whether as duties, imports, excises or licenses, it must relate to one of these subjects. It is not possible to conceive of any other, though, as applied to them, the taxation may be exercised in a variety of ways.'

The subjects of taxation referred to in the act, among others, are the railroad companies, express companies, and other common carriers, steamboats, etc., telephone, life insurance and various other business and occupations.

It was not the intent to tax the corporation or person engaged in the express business. It was not intended to tax the property or capital stock employed by such corporation or person in such business. It must, therefore, be the

business of the corporation or person engaged in the occupation of a common carrier which the law intends to tax. The business is taxed, not on its receipts, nor according to its extent, but by levying and collecting a tax for and in respect of instruments (bills of lading, receipts, etc.) mentioned in Schedule A, or for, and in respect of, the vellum, parchment or paper upon which such instruments shall be written or printed. (See section 6.)

That is to say, the act is an exercise of the power to tax the business of the express company by way of or by means of imposing a stamp tax on its bills of lading or receipts, which it is compelled to use in the transaction of its business.

How has the law-making power exercised its taxing power, and has it done so in a manner clear and free of any reasonable doubt?

The section quoted, headed 'Express and Freight,' makes it the duty of the express company to issue with each shipment or package received a bill of lading (or receipt—I use them interchangeably).

What is meant by 'duty'? The meaning in law is 'that which a person is bound by any legal obligation to pay, do, or perform.'

The express company is put under a legal obligation to do what? To issue a bill of lading.

What is it ' to issue '? To 'issue' is to send out, to send forth, as to issue an order of a commanding officer, or to issue a writ or precept of the court.

The bill of lading or receipt must be set forth, parted with, or, in other words, issued by the express company.

Must be issued to whom? The law is clear, to the shipper, consignor, agent or person from whom the goods are accepted for transportation.

But what kind of a bill of lading is the express company under legal obligation to so issue to the shipper?

It would be an absurd conclusion to say that the company is required to issue to the shipper an unstamped bill of lading or receipt, the issuing of which is made a penal offense by section 7 of the act.

It was not the intent of the statute to place the express company under an obligation to do an illegal act. The bill of lading, or receipt that the express company is to issue, must be a complete bill of lading, a legal instrument, and this can only be a stamped instrument. This is the clear intent of the section, because it not only requires the express company to issue a bill of lading, but proceeds, 'and there

shall be duly attached and canceled as in this act provided, to each of said bills of lading * * * a stamp of the value of one cent. * * * Any failure to issue such bill of lading * * * as herein provided, shall subject the railroad, express companies, etc., to a penalty of fifty dollars.'

The penalty is imposed for a failure to issue a bill of lading with the stamp attached.

The word 'such' qualifies all that goes before in connection with the bill of lading, and must by all rules of construction be held to mean a bill of lading with the stamp attached.

It is contended that the section quoted does not expressly state that the express company shall attach and cancel the stamp. It is, however, a necessary inference that it shall do so. It is made its duty to issue the bill of lading; it can only issue a legal bill of lading, and that is one duly stamped. The shipper has nothing to do with the issuing, the sending forth the bill of lading. The stamp must not only be affixed, but must be 'canceled,' as in the act provided.

Section 9 of the act provides that where an adhesive stamp shall be used for denoting the tax imposed by the act, the person using or affixing the same shall cancel the stamp in a certain manner therein specified.

If the duty of the express company is to issue a complete —a legal—bill of lading, it must be one with the stamp affixed and canceled; and the company can only fulfill that duty by so affixing and canceling the stamp. This would appear to be a necessary inference from the duty imposed by the act.

It is contended that this construction put upon the words 'such bill of lading,' if applied to the same words in the next following provision, prohibiting the reception by the courts of 'such bills of lading' as evidence, unless duly stamped, would make the law mean that no stamped bill of lading should be received as evidence. Such a construction could not be made, as it is opposed to the very spirit and intent of the act. A court is not disposed to be hypercritical as to the use of words by the legislative body, if it can discover the purpose and intent of the legislature, and, if necessary, it will, in construing the act, reject as surplusage a word that is inadvertently used.

Congress has no power to prescribe to courts what they shall or shall not receive as evidence. That is so held in case of Craig v. Dimock, 47 Ill. 308. Although Congress

has no power to prescribe to courts what they shall or shall not receive as evidence, the court would not construe the act as an attempt by Congress to dictate to the court what it should or should not receive in evidence, but will construe the sentence referred to, as intended to provide a further method of enforcing the payment of the stamp, and will, undoubtedly, aid the legislative power in the collection of its revenue, by refusing to receive in evidence such instrument not stamped, or at least until the stamps shall have been first affixed.

There is some language in section 6 of the act which is relied upon to show that the tax may be paid, either by the express company or by the shipper. The section provides 'that there shall be levied, collected and paid for and in respect of the bonds, instruments, etc., matters and things mentioned and described in Schedule A of this act and for or in respect of the vellum, parchment or paper upon which said instrument, matters or things, or any of them, shall be written or printed—by any person or persons, or parties who shall make, sign or issue the same, or for whose use and benefit the same shall be made, signed and issued, the several taxes or sums of money set down in figures against the same, respectively, or otherwise specified or set forth in the said schedule.'

These are general words applicable to all the numerous documents, instruments, businesses, etc., enumerated in Schedule A.

The words, 'for whose use or benefit the bill of lading shall be made, signed or issued,' may be held to apply in principle where the transaction (or the making of the receipt) is done by an agent or broker; but there are matters specified in Schedule A, where it is clearly intended that the party for whose use or benefit the bill of lading is made shall pay the tax, as, for instance, where entries are made of goods at the custom house and a receipt or certificate is given therefor, and also entries for the withdrawal of goods or merchandise from a customs bonded warehouse and a receipt or certificate is therefor given. But such general language used to designate all persons or classes of persons who may, under any provision of the act, be required to pay the stamp tax, will not be allowed to cast any doubt upon the express provision of the act requiring the express company to issue a receipt to the shipper.

It is, however, contended by the defense, that a common carrier may stipulate as to the terms of his contract, and that the court can not prescribe the terms or price of transporta-

tion by the carrier; that in demanding the payment of the tax as an addition to the fixed rate it has only exercised its right to make and fix reasonable rates.

It must be admitted that when the increased cost of handling and transportation demand it, a common carrier has the right to revise and increase his rate, but he can not arbitrarily do so in order to make his customers or the public pay a tax imposed by law on such a carrier or upon the business transacted by him.

The real contention between the shipper and the express company is as to who shall pay this tax, and the express company is endeavoring to make the shipper pay it.

The evidence shows that after the passage of the act and before it went into effect, to wit, on June 29th, the company's general agent issued a certain circular to all shippers of fruit and produce, etc., informing them of the going into effect of the new law on July 1, 1898, and stating that it requires the company to see that a revenue stamp of one cent is affixed to each express receipt issued; that the company will decline to receive any shipments offered to go by express unless they are entered upon the express receipts used by the company and a one cent revenue stamp affixed to each receipt. 'Shippers will be expected to pay to the company one cent for each receipt issued.'

A letter of instructions by the general agent was also issued about the 29th of June, with reference to the same matter. 'A receipt must be given for all express matter.' it states 'and stamps must be canceled with the letters " U. S. X.," and date in ink, indelible pencil or rubber stamp by the party signing the receipt; the value of the stamp must be collected from the party to whom the receipt is given.'

'Canceling stamps will be furnished.' 'Receipts for deadhead matter require a one cent stamp, which must be collected of shipper.'

On July 1st, from the home office at New York, a general circular to all the agencies was issued in regard to the same matter, in which they are informed that a receipt must be issued ' for each and every shipment of goods accepted for transportation over this company's lines.' ' To every receipt and duplicate thereof for a shipment of goods within the United States there must be affixed a United States revenue stamp of the value of one cent.' ' The stamp, after being affixed, must be canceled by writing or stamping thereon with ink or with indelible pencil the initials " U. S. X." and the date of the receipt.' 'In every case the amount of stamps must be collected from the party to whom the receipt is issued.'

'Quotation of rates, etc.   On and after July 1, 1898, all rates quoted must be "plus the government stamp tax."'

It is apparent, therefore, that in demanding this tax of the shippers, the express company has made no revision of its rates, nor, in fact, fixed any increased rate, and that there is simply an effort of the express company to make the shipper pay the tax, levied, as I have stated, upon the business transactions of the company, by the agency or means of a stamp tax upon the bills of lading which the company is required to issue.

It is not a revised increase of rate, because it adds to the former rate the same amount in each case or transaction.

The rate or charge as fixed heretofore by the company must necessarily give a larger profit in some cases than in others, and the cost of handling and transportation be greater in some than in others.   It would, therefore, follow that in some cases the old rate for transportation might be a reasonable one, and might yield a reasonable profit, even if the express company should be obliged to pay this stamp tax.

The express company is a common carrier; is carrying on a business affected with a public interest.   It can not arbitrarily fix its own rates or make such a contract with each shipper as it pleases.   It must treat all alike and must carry for all at a reasonable rate or charge.   The power to revise its rates and fix a reasonable charge or rate does not authorize it to arbitrarily increase all its rates by a horizontal increase thereof without regard to whether such increase leaves a rate, as to any particular shipment, a reasonable or unreasonable one.

The stamp tax is necessarily an arbitrary one.   It may be imposed by the government without regard to value or the amount of the transaction or the cost or expense attending the transaction.

The tax is the same on a receipt for a parcel that may be delivered by hand within a block or two as it is on a receipt for a package that has to be several times handled and carried thousands of miles by the express company.

The express company has not the power of the national government, and can not in a like arbitrary manner add to its rate for performing its duties as a common carrier.

If it is an increase of rate, this is what it has attempted to do; but as before stated, it is not, in fact, a revision or increase of rates, but it is an arbitrary attempt of the company to make the shipper pay a tax, which the law requires the company to pay.   The court must regard the substance of the contention and not the pretense.

I remember as a matter of personal recollection, that at the time of the going into effect of the stamp act during the war of the rebellion, the express companies endeavored at that time to make the shipper pay the stamp tax, and the shipper did for a short time pay it, but it was soon changed and the company paid it, whether in pursuance of any decision or in pursuance of a ruling at Washington, I do not know. I have not been able to find any decision upon the question.

I also recollect that the street railway companies attempted to add one cent to the fare, but did not persevere in their attempt a great while.

The defendant raises a constitutional question, and that is, that if the act does require the defendant to pay for the stamp, it imposes a direct tax in contravention of the Constitution of the United States, within the meaning of the income tax decision of the Supreme Court of the United States.

I shall not pass upon that question, as it was not argued before me. At first glance I see nothing in the contention as to the unconstitutionality of the act.

Stamp acts went into effect, I believe, in England, during the time of William and Mary; they are a recognized method or means of taxation in all countries.

The stamp act was in force for a number of years during the war, and no decision is pointed out which at all intimates that it is unconstitutional.

At first glance, I think there is nothing in the contention, but I will not pass upon it directly.

The relator contends that he is entitled to a continuing mandamus, while the defendant contends that the relief must be confined to the single transaction or shipment mentioned in the petition.

The relator is engaged in a business which requires it to send by express about two hundred parcels a day. To require that it shall seek a mandamus as to each shipment, would be a travesty upon the administration of justice. Such a rule would leave the weak, that is, the shipper, at the mercy of the strong.

A more reasonable rule, and the rule contended for by the relator, prevails in this State.

I have not had time to look up the authorities, but I remember the case of Nelson v. The Chicago & Alton Railroad Company, so decides.

See, also, C. & N. W. Railway Company v. People, 56 Ill. 365, and Vincent v. Chicago & Alton, 49 Ill. 33.

Let the writ of mandamus issue as to the shipment mentioned in the petition and as to all future shipments tendered by the relator."

It only remains for us to order that the judgment of the Circuit Court be affirmed.