HENRY F. ALLNUTT v. THE SUBSIDIARY HIGH COURT OF THE UNITED STATES ANCIENT ORDER OF FORESTERS, AND THE COURT CITY OF THE STRAITS, No. 6,664, A. O. F.

*Corporation—Disfranchisement of member—Cannot be for cause or in manner corporation could not have adopted—By-laws—If unreasonable, void—Defamation of member—Must be without reasonable cause to subject alleged defamer to discipline—Cannot deprive member of his rights unless grossly in fault—Nor can member be called upon to meet vague and uncertain charges—Complaint charging member with defamation without naming injured party—And giving no details of alleged libel—Is insufficient to put alleged defamer on trial—Alternative sentence—Power to impose will not authorize a double one, in absence of special authority—And such a sentence is void—Mandamus proper remedy to reinstate an illegally suspended member.*

1. No corporation can allow its members to be disfranchised for any cause or in any manner which it could not have adopted itself, and all by-laws must be reasonable, and if not they are void.

2. It is well-settled common law that the mere fact of defamation of a member of a corporation by a co-member is no cause for discipline unless without any reasonable cause. Any other doctrine would be monstrous, and a corporation in Michigan cannot deprive any member of his rights unless he is himself *grossly* in fault; neither can a member be called on to meet *vague* and *uncertain* charges.

3. A complaint charging a member of a benevolent society with defamation, without naming the injured party, which complaint is entirely general, giving no details of the alleged defamation, is insufficient to put the alleged defamer on trial, being no charge at all.

4. In the absence of direct provisions to the contrary; it is well settled that power to impose an *alternative* sentence does not authorize a *double* one, and that any such sentence is *void*.

:5. Members of a benevolent society incorporated under the laws of Michigan are entitled, in a proper case, to protection in their rights; and where illegally suspended from such membership, *mandamus* lies for their reinstatement.

Mandamus. Submitted May 12, 1886. Granted June 24, 1886. The facts are stated in the opinion.

*James H. Pound*, for relator.

· *Case & Carpenter* and *T. C. Prosser*, for respondents.

CAMPBELL, C. J. Relator complains that he has been ·unlawfully suspended from membership in Court City of the Straits, which is an incorporated society of the order of For-·esters, organized originally under affiliation with the general ·system of societies of that brotherhood, and obtaining corporate powers under the general statute for benevolent asso-·ciations. He asks a *mandamus* to restore him, and the Sub-.sidiary High Court is impleaded as the superior body under whose order the alleged wrong was done.

It appears from the showing on both sides that the For-·ester associations, which originated in England several years ago, act together, by means of local lodges, usually called "courts," all of which are in some measure subordinate to the Subsidiary High Court, which appears to be a body of ·delegates which has, among other things, a court of final arbitration to which appeals lie from lower courts.

Allnutt, the relator, who is a member of the City of the :Straits Court, was charged, by complaint of another body (the Peninsular), with defaming a member of the latter body, whose name is not given in the complaint. The complaint was entirely general, giving no details whatever of the :alleged defamation, and was not made by the party injured, as it should have been. It was, however, tried before the proper body in the corporation to which Allnutt belonged, .and he was unanimously acquitted. The person referred to :appears to be one John H. Leys, who occupies a high office in the Subsidiary High Court, and who turns out to have been· ·charged with dishonesty and immorality. The Peninsular

court, whose right to do so we have not found in the rules, undertook to appeal, making Court City of the Straits respondent in the appeal. The latter appeared before the arbitration board, represented by relator and another person, who, by what was called a "demurrer," but which was in fact what in law would usually be called an "answer," and was entirely appropriate, raised several objections, a part of which went to the competency of the members of the board of arbitration, and were challenges for cause. The board overruled the other objections, and failed to consider the challenges.

The appellee refused to appear further, and the board proceeded to dispose of the matter without the production of any of the letters or other articles claimed to be libelous, and without any proof of their contents, and undertook to reverse the acquittal, and sentenced Allnutt to a fine of $15, and to two years' suspension. This being communicated to the inferior court, the second respondent here, he was required to desist from any further action as a member, as it is admitted by his local society; which regarded the action of the Subsidiary High Court as illegal, but did not feel justified in defying it. We are now asked to reinstate him.

The Detroit society being a corporation under our laws, the rights of its members are entitled, in a proper case, to protection. The questions discussed relate to the propriety of our interference in this case.

Under our statutes, the corporation in question has the right and duty of determining the conditions of membership. This it has done by its by-laws, and we find nothing in them which makes such membership subject to the action of any outside body. The Subsidiary High Court is not an incorporated body under the laws of this State. One of the objections raised to its action here is that the rules of the order require it to become incorporated. We shall not undertake to discuss that question, but there is evidently much reason for it, as it would be contrary to the general legal rules to allow membership in a corporation to depend on the will or action of an unincorporated outside society. Whatever

advantages may exist in affiliation with other associations, the rights of Michigan corporations must be governed by the laws of Michigan, and corporate privileges cannot be destroyed in violation of them. If there are rights independent of those of corporators, they stand on a footing of their own. If members see fit to subject themselves voluntarily to arbitration, it would not be desirable for this Court to undertake to review the action of extrajudicial bodies, and intermeddle with their action in the course of delegated power. But where a corporator is deprived of valuable corporate rights by interference to which he has not assented, he can call upon his own corporation to do him justice. In the present case, if relator is shut out from his corporate rights, he loses privileges of considerable pecuniary value; as benefits and support during sickness, and other similar aid. If these were entirely distinct from his social privileges, the latter would probably be left to the social forum. But whether joint or distinct, we can only look at the case as one where the rights are of tangible value, and determine them accordingly. We shall not, therefore, discuss the mutual relations of these bodies on any other basis, and we shall consider the action had against Allnutt merely to see whether it is such that, by his tacit recognition of the usages of the order, he can be held bound by the proceedings complained of.

It may be fairly held that no corporation can allow its members to be disfranchised for any cause or in any manner which it could not have adopted itself. All by-laws must be reasonable, and if not so they are void. This order professes to be dependent for its methods and usages on those of an English corporation, which must be supposed subject to this same common-law rule of reasonableness. All by-laws and regulations must be construed, therefore, on that principle; and so construed, the proceedings here are very singular.

Assuming that the society to which relator belongs has accepted, as it seems to have done, the rule that a member may be disciplined for libel of another member, yet the English rules expressly, and the American rules by the only

implication which is reasonable, restrict the punishment to cases where the libel is without any reasonable cause. It is well-settled common law that the mere fact of defamation of another member is no cause of discipline. Any other doctrine would be monstrous, and it cannot be held that a corporation in this State shall deprive any member of his rights unless he is himself grossly in fault. Neither can any one be called on to meet vague and uncertain charges. The charge here was no charge at all, and the conviction itself does not show who was defamed, or by what means.

Passing by other defects, which are, however, very serious, the rules of the order, assuming them to be valid, limit fines in this class of cases to five dollars. (Art. 21.) The American rules differ in this from the English; but neither code allows more than one form of punishment to be imposed. (Art. 24.) Fine, suspension, or expulsion may be imposed, but there is nothing in any of the rules allowing a double punishment. In the absence of direct provisions to the contrary, it is well settled that power to give an alternative sentence does not authorize a double one, and that any such sentence is void.

Giving to the peculiar affiliation shown here the widest possible effect, and assuming—what all parties have assumed, for the purposes of this proceeding—that the corporation has subjected itself and its members to the complete system of the order, the sentence given is null and void, and the prosecution itself entirely unauthorized. Had the proceedings been properly instituted, and the sentence competent, we should have declined to scrutinize what might be treated as resting on a jurisdiction by consent. But these proceedings disregarded all correct principles, and we think it proper to require relator's restoration, and, for this purpose, the writ must go to the defendant corporation, without costs, as we are satisfied that body has meant no wrong.

So far as the other respondent is concerned, we do not propose to review its action directly, because it is not a body known to the law, and the action is void according to its own code. It is denied, on its own behalf, that this body is a cor-

poration, and, that being so, the appearance by Mr. Leys amounts to nothing, and the Detroit corporation must be considered the only respondent whom we can recognize as before us. We have looked into the proceedings, because pertinent to the corporate action of the legal respondent, and have considered the arguments so ably presented in behalf of the high court. It is much to be regretted that so much personal bitterness has governed parties who should have been impartial. No association can hold together if its authorities are not disposed to respect the rights of members fairly, and in accordance with impartial justice.

The writ must issue as above suggested.

SHERWOOD and MORSE, JJ., concurred.

CHAMPLIN, J. (*dissenting*). I fully agree with the Chief Justice that no *mandamus* should issue against the Subsidiary High Court of the United States Ancient Order of Foresters. I also think that no *mandamus* should be granted against the Court City of the Straits, No. 6,664.

The writ of *mandamus* is a discretionary writ, and ought never to issue when there exist other adequate remedies, or unless substantial justice will be promoted by its enforcement. When the conclusion is reached that the Subsidiary High Court is not amenable to this process, there is no contention left. The relator and the Court City of the Straits, No. 6,664, are in perfect accord. It filed an answer admitting all the averments in relator's petition to be true. It voted money for relator's benefit to prosecute his suit. It never has carried into effect the award of the final arbitrators suspending the relator, and he has not been suspended by the Court City of the Straits, No. 6,664. If the relations of the relator with the Foresters have been suspended, it has been done by the voluntary act of relator. So far as the Court City of the Straits, No. 6,664, is concerned, it appears that it is willing and anxious to restore the relator to every right and position which he has lost, and consequently the writ of *mandamus* is entirely unnecessary for the purpose of compelling it to do an act which it is willing to do without com-

pulsion.   It is claimed that this should be done because it is a corporation, and hence is subject to be dealt with as such. But relator makes no complaint against this body as a corporation or otherwise.   He has not been amoved or deprived of any of his rights and privileges as a corporator by any act of the corporation.

It seems unnecessary to say anything further, although it appears quite plainly that the relator's grievance does not arise out of any act of the corporation.   It is possible that there is a legal corporation of the Court City of the Straits, No. 6,664.   That I shall not attempt to determine.   But if there is such a corporation, it is one without officers and by-laws, and none of the rights and privileges claimed by the relator are derived from, or depend in any manner upon, corporate existence.   These all flow from laws, rules, and regulations of the voluntary association denominated the Ancient Order of Foresters.   His original entry into this order was voluntary, and under a promise to abide by the constitution, laws, and regulations of the society.   These laws and rules, whether reasonable or unreasonable, do not concern us. We have no power to declare them unreasonable or void ; and nothing is plainer than that one connecting himself with such a voluntary society must be content with such treatment as he receives which does not violate his person.   He cannot proceed in a court of law to vacate or reverse their action, nor can he compel them to retain him as a member of their society against their wishes.

The connection of the Court City of the Straits, No. 6,664, with the Subsidiary High Court, or with the society of Foresters, is not in virtue of the former being a corporation, but by virtue of a charter from the latter court.   If this charter should be arrested, the corporation might not be dissolved, but the members belonging to the chartered court would lose the rights and privileges granted to it by the charter, and would cease to be members of any court.   Restoring the relator to the corporation will not restore him to the rights, benefits, and privileges derived from being a member of a chartered court under the Subsidiary High Court.

I think the *mandamus* should be denied.