GOLDEN STAR LODGE NO. 1 *v.* WATTERSON.

1. INSURANCE—FRATERNAL BENEFICIARY ASSOCIATIONS—BY-LAWS
   —REVOCATION OF CHARTER.
   The revocation of the charter of a subordinate lodge of a fraternal beneficiary association without giving an opportunity for a hearing, for the reason that the subordinate lodge failed to convict a member of embezzlement, is arbitrary and illegal.

2. SAME—EXHAUSTION OF REMEDIES—MANDAMUS.
   Although a member of a beneficiary association is required to exhaust his remedies given by the rules of the society before resorting to the courts, a lodge whose charter has been revoked is not bound by such requirement when no provision is made in the charter of the association for an appeal by a subordinate lodge, and the appeal of a member is not made final, and when admission of its members to other lodges is not a matter of right and involves the payment of additional fees.

3. SAME—MANDAMUS—UNINCORPORATED SOCIETY.
   Mandamus lies to compel the officers of a benefit association, organized under 2 Comp. Laws, chap. 212, to vacate an order revoking the charter of a subordinate lodge without cause and without a hearing.

4. SAME—EQUITABLE REMEDY—MANDAMUS.
   In such case an injunction would not lie because the wrong had been accomplished.

5. SAME—LEGAL REMEDY—DAMAGES.
   The legal remedy for damages being uncertain, indefinite, and inadequate, mandamus is the only sufficient remedy.

6. FRATERNAL BENEFICIARY ASSOCIATIONS—POWERS.
   Associations organized under 2 Comp. Laws, chap. 212, may sue and be sued. 3 Comp. Laws, § 10025; Act No. 175, Pub. Acts 1907.

7. MANDAMUS—NONRESIDENT RESPONDENTS—DOMICILE OF FRATERNAL BENEFICIARY ASSOCIATION.
   Officers of a fraternal beneficiary association organized in Michigan, who claim to be nonresidents of the State but who submit by an appearance to the jurisdiction of the courts, may be required by mandamus to recognize the rights of a subordinate lodge.

8. Same—Parties—Joinder.

It is proper to join as defendants in mandamus the officers of such society who have duties to perform in maintaining the legal rights of the petitioner.

Certiorari to St. Clair; Law, J. Submitted October 5, 1909. (Calendar No. 23,489.) Decided December 10, 1909.

Mandamus by Golden Star Lodge, No. 1, of the Ladies' Auxiliary to the Brotherhood of Railroad Trainmen and others to compel Ray N. Watterson, grand mistress, and Augusta M. Statzer, grand secretary and treasurer, to vacate an order revoking relator's charter. An order granting the writ is reviewed by respondent on writ of certiorari. Affirmed.

*John B. McIlwain*, for relators.

*Cady & Crandall*, for respondents.

Grant, J. The Grand Lodge of the Ladies' Auxiliary of the Brotherhood of Railroad Trainmen is a fraternal beneficiary society, organized under Act No. 119, Pub. Acts 1893. The relator in this case, Golden Star Lodge No. 1, was the first lodge organized under its charter. The grand lodge adopted a constitution of 50 sections, and adopted by-laws and general rules to the number of 80 sections. The organization extends into other States. Among its officers is the grand mistress, who, during the transactions covered by the record, held that office. Section 45 of the constitution provides: "The charter of any subordinate lodge may be suspended or revoked by the Grand Mistress for any of the following reasons"—specifying the reasons; and among them is that of "improper conduct." It is unnecessary to state the other reasons, as they have no bearing upon the controversy. The relator here is composed of 52 members, each of whom has a certificate of insurance to the amount of $500. The constitution provides also for a grand secretary and treasurer,

and this office was held by the respondent Augusta M. Statzer. One Amy Downing, a member of the relator, had been, for several years, the grand secretary and treasurer of the grand lodge. No place is fixed by the constitution for the headquarters of the grand lodge, but the home of the grand lodge officers has been its customary headquarters. Prior to Mrs. Downing's removal, the headquarters had been at Port Huron, where is located the relator.

Mrs. Downing was charged with the defalcation of funds intrusted to her to the amount of $3,242.23. An examination and an audit, by the grand executive board, of her accounts, showed a deficit of the above amount. This board reported that she either knowingly, negligently, or wilfully failed to account for the same. She was thereupon removed from office.

On November 17, 1908, one Minnie Stadtlander, mistress of Lodge No. 261, Aurora, Ill., sent a communication to relator, charging Mrs. Downing with defrauding the grand lodge. As required by the rules of the order, relator appointed a committee of five to investigate the charge. The committee reported to the relator that they found no evidence of fraud on the part of Mrs. Downing, meaning, as they expressed it, that "she had no guilty intent." Mrs. Downing was thereupon acquitted by a vote of the members of the relator. Upon the record of this meeting appears the following:

"Sister Rigney asked permission of the lodge to publish their findings in the case they had just tried. Moved by Sisters Gee and Sutherland that permission be granted. Carried. After some discussion it was decided to let it stand as it was, and not give anything for publication."

This action of the relator was published in a newspaper at Port Huron. The action of the relator acquitting Mrs. Downing, with a clipping from the newspaper announcing the action, was sent to the respondent Mrs. Watterson.

On February 17, 1909, Mrs. Watterson sent a commu-

nication "to the officers and members of Golden Star Lodge No. 1," notifying them that the charter of Golden Star Lodge No. 1 would be revoked for failure to convict Mrs. Downing, and for violating the rules of the order in publishing an account of her acquittal. This communication further stated:

"Golden Star Lodge No. 1 is hereby given opportunity, in accordance with section 45, Constitution Grand Lodge, to answer the within charges before March 1, 1909."

The relator answered this communication, alleging that the trial was in strict accord with the rules of the order, and that the finding was not published by its authority. On March 1, 1909, respondent Watterson, as grand mistress, sent a communication to the relator revoking its charter for failure to convict Mrs. Downing, and because it had failed to give excuse "for publishing the report of the committee or proof that it was not published by the members of Golden Star Lodge No. 1." Meanwhile the respondent the grand treasurer had refused to receive the relator's dues, evidently for the reason that its charter had been revoked, and it was no longer a member of the order. Thereupon the relator filed its petition in the circuit court for the county of St. Clair to compel the respondent Watterson to set aside the order revoking its charter and compel the respondent Statzer to receive the assessments of its members, and that the relator be restored to its rights and benefits in the grand lodge. An order to show cause was issued, the respondent answered, issues were framed, testimony taken, and the writ issued, and the case is now before us for review upon certiorari.

Respondents object to the order of the court for the following reasons:

"(1) Because the action of the Grand Mistress in revoking the charter of Golden Star Lodge No. 1 was in accordance with the constitution, laws, and rules governing the society.

"(2) Because the members of Golden Star Lodge No. 1

are required to exhaust their remedies within the order before appealing to the courts. This they have not done. They might have: (a) Appealed to the grand lodge. (b) Applied for a dispensation transferring them to a sister lodge.

"(3) Because a writ of mandamus will not issue against officers of an unincorporated society.

" (4) Because a writ of mandamus will not issue out of our courts against citizens of another State.

" (5) Because the order is erroneous, in that it authorizes the issuance of a writ of mandamus directing two separate and distinct officers to perform certain and distinct duties which are not joined in character."

1. The failure of the relator to convict Mrs. Downing constitutes no ground for revoking the charter. This is conceded in respondents' brief. The member convicted has an appeal to the grand lodge, but there is no provision for an appeal in case of acquittal. Rule 2 of general rules governing subordinate lodges provides:

"Secret work and all business of the lodge shall be kept inviolate; and any member who shall reveal any of the secrets of this lodge shall, upon conviction thereof, be expelled, suspended, or reprimanded, as the lodge may determine."

The learned circuit judge held that this rule had no relation to this issue. He furthermore found, as a matter of fact, that there is no testimony in the record to show that any particular member of the lodge thus violated this rule of secrecy. There was testimony upon the subject, and we will not review the finding of the fact made by the circuit judge. It follows that both reasons for revoking the charter have no foundation in fact. The proceeding on the part of the grand mistress was summary, and without any attempt at a hearing. It is true she accorded the relator the right to answer her letter of notification. She received the answer, which denied the charges made. Without giving a chance for argument, proofs, or hearing, she assumed authority to revoke the charter. The only defense to this action made by her attorneys is that the charter confers the right to this summary procedure.

It is contrary to every principle of justice and fair play. Such authority would result in conferring upon the grand mistress the arbitrary power to revoke the charter of any subordinate lodge, without any good reason, and without a hearing.

2. There is no provision in the charter of this society for an appeal by a subordinate lodge. The only appeal provided is by an aggrieved member; and, even in that case, the charter does not make the determination of the appellate tribunal final. Consequently *Fillmore* v. *Knights of Maccabees*, 103 Mich. 437 (61 N. W. 785), and like cases have no application to the facts of this case. It is, however, insisted that it was the duty of the members of the relator to apply for admission to some other subordinate lodge; but such applicant cannot become a member of some other lodge as a matter of right. Four black balls will defeat her election; and, besides, she is required to pay a fee of 50 cents as a condition to admission. The law will not leave property rights of members to such an uncertain remedy. The 52 members composing the relator are one body of individuals, just as much as are the stockholders of a corporation. Their organized body is authorized to represent them in controversies which involve the rights of all. In these controversies they have chosen certain officers to speak for them and to protect their rights. One suit can settle the rights of all; but respondents' contention would leave each member to fight her own battle. I find no authority sustaining this contention.

3. It is next insisted that the writ of mandamus will not issue against officers of an unincorporated society. The grand lodge and the relator are organized under the laws of this State, above cited. The grand lodge insures its members by and under the authority of the State, and by no other right. It cannot organize under the laws of the State, and then deny to its members the right of the State, by its proper officers and tribunals, to compel those incorporated under it to perform the duties imposed upon

them by law, and to restrain their illegal action. The act (section 1) declares that fraternal benefit associations organized under it are corporations, societies, or voluntary associations organized and carried on for the sole benefit of their members and their beneficiaries, and not for profit. To deny the wronged members of this association the remedy by mandamus would in effect deprive them of any remedy. The relator cannot proceed by injunction, for the wrong has been accomplished. Neither the relator nor its members can proceed in an action at law for damages, because the organization provides no funds for the payment of such damages, and the damages are too indefinite to be estimated. *Lavalle* v. *Société St. Jean Baptiste de Woonsocket*, 17 R. I. 680 (24 Atl. 467, 16 L. R. A. 392). The only remedy left is the restorative remedy by writ of mandamus, which reinstates the member and does justice to all concerned. *Lavalle* v. *Société St. Jean Baptiste de Woonsocket, supra; Allnutt* v. *Subsidiary High Court A. O. F.*, 62 Mich. 110 (28 N. W. 802); *Attorney General* v. *Express Co.*, 118 Mich. 682 (77 N. W. 317). Such organizations are endowed by the law with a legal entity, and may sue or be sued. Section 10025, 3 Comp. Laws; Act No. 175, Pub. Acts 1907.

Important and tangible property rights are involved. By the act of the grand mistress the entire membership, comprising the relator, is deprived of $26,000 of insurance, unless by grace its members may be admitted into other lodges. In *Burt* v. *Grand Lodge F. & A. M.*, 66 Mich. 85 (33 N. W. 13), no property rights were involved, and the court found that the relator, Burt, was not, and never had been, a member of the grand lodge, or of the lodge that originally undertook to expel him. Such cases do not affect the question in the instant case.

4. Respondents are citizens of another State, and it is urged that the writ of mandamus will not issue against them. Migratory headquarters of an association like this,

organized under the law of Michigan, cannot control the jurisdiction of the courts when the rights of the citizens of Michigan are involved. The domicile of the association, not the domicile of its officers, controls the jurisdiction of the courts. Under the respondents' contention, an aggrieved subordinate lodge in Michigan, the home of the association, or one of its members, would be compelled to resort to the courts of California or Texas if the grand mistress of the order should be located and have her home in either of those States. It appears that the grand lodge had made no provision for a State agent upon whom service could be made. Service of the order to show cause was therefore made, under a proper showing, upon another subordinate lodge located in St. Clair county. The validity of this service is not contested. The respondents, it appears, were notified of such service and voluntarily appeared and answered. They, therefore, submitted to the jurisdiction of the court. Further discussion is unnecessary.

5. The last contention is that the respondents were improperly joined in this proceeding, and therefore the suit must fail. It is claimed that the respondents were acting in unison, and if they were, they were properly joined. Undoubtedly the action of the grand treasurer was based upon the order of the grand mistress in revoking the charter. Each had a duty to perform. The action of the grand mistress being illegal, it was the duty of the grand treasurer to receive the assessments which relator was legally obligated to pay. The objection is purely technical, and does not affect the substantial rights of the parties. It was entirely proper to make all the officers of the defendant parties who had a duty to perform in maintaining the legal rights of the relator.

The learned circuit judge wrote an elaborate opinion, setting forth in full the correspondence between the parties, the facts found, and his legal conclusions. With-

out publishing it, we refer to it, as those who have similar questions will find it a valuable opinion.[1]

The judgment is affirmed.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.

---

[1] The following portions of the opinion of the circuit judge above referred to are inserted for reference.—REPORTER.

"* * * The first legal question arising from this record is as follows:

"Was the action of the grand mistress in attempting to revoke the charter of Golden Star Lodge No. 1, and the action of the grand secretary and treasurer in refusing the money sent to pay assessment No. 105, in accordance with the constitution, laws, and rules governing the society?

"Should this question properly be answered in the affirmative, it follows that relator's petition must be dismissed; if in the negative, it will then be necessary to decide whether relief can be granted in this mandamus proceeding.

"From the letter of respondents to Golden Star Lodge No. 1, of February 17th, and from the testimony taken in this court, it appears that respondents attempted to revoke the charter of Golden Star Lodge No. 1 for the following reasons:

"(1) Because the committee appointed to try Amy A. Downing failed to find her guilty of the charge made against her by Minnie Stadtlander.

"(2) Because the lodge concurred in the decision of the committee.

"(3) Because the lodge acted on and passed a resolution authorizing the publication of the decision of the committee, resulting in its publication in the Daily Herald on January 8, 1909.

"It has been held that a grand lodge of a mutual benefit society can only enforce a forfeiture of the rights of a subordinate lodge and its members by a strict compliance with the laws of the order. *Grand Lodge United Brothers of Friendship* v. *Williams* (Tex. Civ. App.), 108 S. W. 195. This seems to be a principle of law founded on equity and justice. It follows, of course, that the officers of a grand lodge must be bound by the same strict rules as the body itself. I have not been able to find any law or rule of the grand lodge of this association that gives its grand mistress power to revoke the charter of a subordinate lodge because a committee fails to convict a member against whom charges have been made, or because the subordinate lodge concurs in such action of the committee. Where the by-laws of a society provide that an accused

member shall be tried before a jury chosen from the members of the local assembly, but give no power to the superior body to direct a local assembly to expel one of its members, the superior body cannot expel a local assembly for refusing to expel one of its members. *Holomany* v. *National Slavonic Society,* 39 App. Div. 573 (57 N. Y. Supp. 720).

" In revoking the charter of the subordinate lodge the respondent grand mistress claims to have acted under section 45 of the constitution of the grand lodge. This section confers no such power. The respondent grand mistress also claims that the subordinate lodge violated rule 2 governing subordinate lodges. Said rule provides that all business and secret work of a lodge shall be kept inviolate, and provides that any member who reveals any of the secrets of the lodge shall, upon conviction thereof, be expelled, suspended, or reprimanded, as the lodge may determine. This rule has no relation to the issues here involved; and, if it had, there is no testimony in this record tending to show that any particular member, or that the lodge itself, is guilty of the violation of any rule prohibiting the disclosure of the business or secrets of the lodge. In fact, the grand mistress had the evidence before her that the lodge had informally decided not to permit the publication of the decision acquitting Mrs. Downing.

" In the mandate revoking the charter of Golden Star Lodge No. 1, it is provided that:

" ' No. 1 is hereby given opportunity in accordance with section 45, Constitution Grand Lodge, to answer the within charges before March 1, 1909.'

"No day or place is fixed for a hearing. This is no more than saying to the subordinate lodge:

" ' If you have any defense to make, you may send me your documents. I have already revoked the charter of your lodge, but if you have anything to say about my official action already taken, I will hear you.'

"This record shows that any answer to the charges made by the grand mistress would have been without any effect, and any appeal to her by any member of Golden Star Lodge No. 1 a vain and useless proceeding. On March 4th, or about that time, we find both respondents refusing to receive any communication through the mail from the subordinate lodge. The opportunity given the lodge to answer the charges by the grand mistress is not in accordance with section 45 of the constitution of the grand lodge. After receiving the order of February 17th from the grand mistress, the officers of Golden Star Lodge No. 1 sent her a full copy of the records of the meeting at which she claimed the lodge authorized the

report of the committee to be published; this was accompanied with a denial that the charge was true. The grand mistress made no reply to this communication.

"No other conclusion can be reached than that the action of the grand mistress in revoking the charter of the subordinate lodge is not authorized by the laws of the society. It was not a mere erroneous proceeding on the part of that official, but an arbitrary usurpation of power, which should not be allowed to affect the legal status of Golden Star Lodge No. 1, or deprive any of its members of their property rights in their benefit certificates. While the prior relations between the respondent grand mistress and some of the members of the lodge, particularly Amy A. Downing, may not have been pleasant, and may have been of such a nature as to arouse resentment in her, still she had no right to permit a spirit of violent prejudice to control her official action and to result in a ruling that is illegal as well as oppressive. The action of the grand mistress in revoking the charter of the subordinate lodge, prior to a hearing, the action of the grand secretary and treasurer in refusing to receive assessment No. 105, and the action of both in refusing to receive, open, and consider communications from the treasurer of the subordinate lodge, were contrary to natural justice, in violation of the rules and laws of the society, and done in bad faith.

"Is the remedy by mandamus sought by relators in this court an appropriate remedy? The rule is well established that courts will not interfere with the action of an incorporated or unincorporated benefit society in enforcing its discipline, unless such action is contrary to natural justice, or in violation of the laws and rules of the society, or done *mala fides*, and then only after the party complaining has gone as far as he can go, and done as much as can be done to obtain the relief sought within the society. It has been found that the action of the respondent grand officers in the premises was contrary to natural justice, contrary to the laws and rules of the society, and *mala fides*. Have the relators done all they could do within the society to obtain the relief which they here seek?

"What relief is given them by the laws and rules of the society? Section 67 of the constitution of the subordinate lodge reads as follows:

"'Any officer or member feeling that an injustice has been done her in a trial by this lodge may appeal to the grand mistress, provided such appeal is made in writing, and within thirty days from date of verdict rendered. A copy of such appeal shall be furnished the secretary of the lodge and by her entered in the records of the trial. The appeal, together with a copy of the charges preferred, testimony offered, and verdict rendered, shall be forwarded to the grand mistress under lodge seal. If the sister considers that the grand mistress' decision is unjust she may appeal from that decision to the grand lodge, whose decision is final. In case of appeal

from decision of grand mistress, by a lodge or member, notice of same shall be given that officer within thirty days from the date of decision rendered, and a certified copy of proceedings must be forwarded under seal of lodge to grand secretary, who will present the same to the next meeting of the grand lodge.'

"Section 67 of the constitution of the subordinate lodge does not provide for an appeal in a case like the present in any very clear or plain terms. The part relating to an appeal to the grand mistress is preceded by the words 'any officer or member feeling that an injustice has been done her in a trial by this [subordinate] lodge, may appeal to the grand mistress.' No one is complaining to which this language can apply. Further along in this section the following language is found: 'In case of appeal from decision of grand mistress by a lodge or member, notice of same' shall be given, etc. If the right last set forth means an appeal from the ruling of the grand mistress, after an appeal to such officer by 'any officer or member feeling that an injustice has been done her,' this section would give no right of appeal in this case. If the last part of the section quoted is intended to give a lodge or a member thereof a general right of appeal from any ruling of the grand mistress, then it would apply after an appeal had been first taken to the grand mistress. If this section is applicable, as respondents contend it is, notice of appeal should have been given to the grand mistress within 30 days from the date of the decision appealed from, and a certified copy of the proceedings should have been forwarded to the grand secretary.

"The date of the decision of the grand mistress was February 17th. Within less than 30 days both respondents refused to open any communication from the officers of Golden Star Lodge No. 1. Soon after this Mary Harris, the treasurer of the subordinate lodge, wrote both respondents, asking for an explanation of such action, but received no reply. By the action of the respondents they rendered it impossible for relators to comply with section 67 in taking an appeal, for they refused to the subordinate lodge the benefit of any communication whatever with them as officers of the grand lodge, and rendered it impossible to file with them any appeal papers.

"No appeal is required if it appears such appeal would be useless. *Schrempp* v. *Grand Lodge A. O. U. W.*, 70 Mo. App. 456; *Harris* v. *Wilson*, 86 Mo. App. 406; *Schou* v. *Sotoyome Tribe No. 12*, 140 Cal. 257 (73 Pac. 996).

"If an appeal is defeated by the nonaction of an officer of the supreme body in failing to give the notice of a decision, as required by the laws of the order, the complaining member is entitled to seek relief in the courts. *Steiner* v. *Supreme Court I. O. F.*, 149 Mich. 567 (113 N. W. 15); *Supreme Council Order of Chosen*

*Friends* v. *Forsinger*, 125 Ind. 58 (25 N. E. 129, 9 L. R. A. 501, 21 Am. St. Rep. 196).

" It is argued that every member of Golden Star Lodge No. 1 has an opportunity to save her property interests in her benefit certificates by seeking a dispensation to join some other lodge, under section 47 of the constitution of the grand lodge, which reads as follows:

" ' A member of a defunct lodge may be granted a dispensation to join some other lodge upon application to the grand secretary and treasurer. Such dispensation shall be treated the same as a card of withdrawal, when presented to a lodge for admission.'

"It appears by this section that the granting of the dispensation is discretionary with the grand mistress. It also appears in the testimony that four adverse votes only are necessary to exclude an applicant for membership in a subordinate lodge. It also appears that under the rules of the society a person has to be a member of a subordinate lodge, or her rights under a benefit certificate are entirely canceled. Individual members of Golden Star Lodge No. 1 cannot become members of other subordinate lodges as a matter of right, and hence are not barred from seeking relief in the courts by reason of any rights that might possibly be granted them under said section 47. *Holomany* v. *National Slavonic Society*, 39 App. Div. 573 (57 N. Y. Supp. 720).

"There is no law or rule of the Ladies' Auxiliary to the Brotherhood of Railroad Trainmen which attempts to prohibit recourse to courts of law. The prohibition of such a right cannot rest on custom or the good faith of any of the parties. *Wuerthner* v. *Benevolent Society*, 121 Mich. 90 ('79 N. W. 921, 80 Am. St. Rep. 484).

" A distinction is made in many courts between a mandatory and a permissive right of appeal in mutual benefit insurance cases. In this case the right of appeal, if it exists at all, is only permissive. *Bauer* v. *Knights of Pythias*, 102 Ind. 262 (1 N. E. 571); *Wuerthner* v. *Benevolent Society, supra.*

"The grand lodge of this order, as well as Golden Star Lodge No. 1, is a voluntary association. It is argued by relators that a writ is not sought against a voluntary association, but against two officers, and hence the rule established in many jurisdictions, to the effect that courts will not control the action of a voluntary association by mandamus, has no application. However, to control the action of officers of an association, whether incorporated or voluntary, is in effect to control the action of the association itself. I do not think there is much force in this argument of relators. Were the grand lodge and the subordinate lodge incorporated bodies, there would be no doubt of the right of relators to the relief asked.

"In *Weidenfeld* v. *Keppler*, 84 App. Div. 235 (82 N. Y. Supp. 634), it is said:

" 'With the exception of California, no case is cited which will support the contention that a writ of mandamus has ever been allowed as against a voluntary incorporated association to restore rights of membership.'

"In many jurisdictions the writ of mandamus has been allowed to issue to restore rights of membership in incorporated associations where property rights are involved, and I think such is the rule in this State.

"In *Lavalle* v. *Société St. Jean Baptiste de Woonsocket,* 17 R. I. 680 (24 Atl. 467, 16 L. R. A. 392), a Rhode Island case, it was held to be the proper remedy, and a demurrer to a declaration, in a suit for damages for unlawful and wrongful expulsion, was sustained.

"The principal legal question in this case is whether mandamus is an available remedy by means of which relators can compel a restoration to their rights, of which they have been wrongfully deprived. This question involves a consideration of the nature of mandamus, the proposed remedy, as well as the legal status in Michigan of an unincorporated mutual benefit society. In this State mandamus is a civil action. It is no longer regarded as a mere prerogative writ, and is considered as an ordinary process in cases to which it is applicable. *Woodworth* v. *National Bank,* 144 Mich. 338 (107 N. W. 905).

"A fraternal benefit society, incorporated or unincorporated, issuing policies of insurance on the lives of its members in favor of beneficiaries named in such policies, can no longer be considered as a private institution, or the contracts of insurance made by it as mere private contracts. The business of life insurance is a public one, which affects the welfare of millions of our people. The fund accumulated by regular contributions of the members of benefit societies is a trust fund, in which every one who has paid into it has a vested property interest. The right under one of these policies is a valuable property right. The member acquires a status. His relation to the association is something more than that created by an ordinary contract. The enforcement of the right of membership, the right of the members of a subordinate lodge to maintain its existence against the wrongful act of a grand lodge or its officers, is not comparable to the enforcement of the obligation of private corporations, as this right is defined in the recent case of *Booker* v. *Medical College,* 156 Mich. 95 (120 N. W. 589).

"The legislature of this State has enacted statutes which provide under what conditions a benefit society can transact business. The Ladies' Auxiliary to the Brotherhood of Railroad Trainmen is organized under, and dependent upon, Act No. 119 of the Public Acts of 1893, as amended. Section 1 of this act as it now stands declares a fraternal beneficiary association to be a corporation,

society, or voluntary association having a lodge system, with ritualistic form of work and a representative form of government, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit. This section provides as to the insurance associations under it may transact, how funds shall be raised, to whom benefits may be paid, and that such association shall be exempt from the insurance laws of this State, except as provided in the act, and that death claims shall be invalid. Section 2 relates to the number of persons required to form an association under the act. Section 3 states that all associations organized under the act shall comply with the provisions of the act regulating annual reports and designating the commissioner of insurance as the person upon whom process may be served; provides where and how suits may be brought against such association, and how service may be made upon them, and when costs may be awarded against them. Section 4 relates to the methods by which similar associations organized in foreign jurisdictions may be permitted to do business within this State. Section 5 provides for annual reports to the commissioner of insurance; for the issuance each year of a license to such associations to continue business, without which license the association has no authority to do business within the State; for the method and manner of making of the reports; as to just what they shall contain, and that they shall, in substance, be published in the annual report to the commissioner of insurance. Section 6 provides that any such association, not having its principal office within the State, shall appoint the commissioner of insurance as its attorney upon whom process may be served. Section 7 provides that such official shall issue a permit to any association which has complied with the law. Sections 8, 9, and 10 provide for the incorporation of such associations as desire to become incorporated. Sections 11, 12, 13, and 14 provide a method by which subordinate lodges may become incorporated. Section 15 exempts any money to be paid by any association organized under the act from attachment or garnishment for any liability of the certificate holder of beneficiary. Section 16 provides for the criminal punishment of any person who shall wilfully make false or fraudulent statements relating to matters therein described. The remaining sections of the act relate to matters which show that the State has taken complete jurisdiction and control over associations organized under the act, whether incorporated or unincorporated.

"While the grand lodge of this order is not incorporated, it has been brought completely under the control of this State by the statutes mentioned. It not only 'enjoys privileges and exercises powers expressly granted by the State,' but its duties are public

ones, the performance of which the State has commanded, the omission to perform which the State has prohibited. Positive law should govern the relation of this association to its members as well as to the State. The association is made 'a distinct legal entity.' It possesses attributes of perpetual succession, and the capacity 'of suing and being sued.' Of what use would all these statutory provisions be, governing the relation of the society to the State, if the society is permitted, not only to break an existing contract, but to wholly destroy the existing status of the members of the subordinate lodge ?

"I think the restorative remedy here asked for is the only adequate one, and the mandamus prayed for should issue."