## William F. Flowers, George Finnegan and Fred C. Caliger, Appellees, v. Grand Lodge of the Brotherhood of Railroad Trainmen, William G. Lee, President, et al., Appellants.

### Gen. No. 21,877.

1. INSURANCE, § 719*—*when courts have no jurisdiction over question of removal of member of association.* In a suit against the grand lodge of a fraternal beneficial association to enjoin it and its officers and agents from revoking, suspending or canceling the charter of a subordinate lodge or interfering with the membership or office of any member of the subordinate lodge because of any action by it or its members in connection with certain charges made against and trial of one of such members who had been removed by the president of such association from a certain office held by such member, *held* that the court would have no jurisdiction in such suit over the question of the removal of such member or the controversy between him and the president.

2. INSURANCE, § 725*—*when court of equity will take cognizance of action of threatened revocation of charter of subordinate lodge.* Where the president of a fraternal beneficial association threatened to revoke the charter of a subordinate lodge of such association which act, if performed, would so imperil the right of the several members of such lodge in the insurance funds of the association that such right might easily be lost, or, from a practical standpoint, be rendered valueless, and would give rise to damages which could not accurately be measured without complicated accounting and a multiplicity of suits, *held* that a court of equity might properly take cognizance of the matter, notwithstanding the remedies within such association had not been exhausted, where the only remedies provided within the association were mere privileges and not enforceable rights of the members.

3. INSURANCE, § 725*—*when injunction against revocation of charter of subordinate lodge is properly granted.* Where a member of a subordinate lodge of a fraternal beneficial association was tried by such lodge upon a certain charge and acquitted, and the lodge refused to recall its action and find such member guilty when requested so to do by the president of the association, to whom the constitution of the association gave no such power or authority, *held* that a writ of injunction against the president and the grand lodge of the association restraining him and it from revoking the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

charter of such subordinate lodge because of such refusal by it, as threatened by him, was properly issued and made permanent.

4. INSURANCE, § 723*—*when members entitled to equitable relief against acts of association.* Where a fraternal beneficial association undertakes to violate its constitution and rules and by doing so injuriously affects the substantive insurance or property rights of its members, they are entitled to seek relief in a court of equity.

5. INSURANCE, § 725*—*when bill to restrain revocation of charter of subordinate lodge not prematurely filed.* A bill for injunction to restrain the grand lodge of a fraternal beneficial association, its officers and agents, from revoking the charter of a subordinate lodge of the association or interfering with the membership or office of any member of such subordinate lodge, filed without first appealing to such grand lodge under the laws of the association, *held* not filed prematurely where such grand lodge meets only once in three years, and in the meantime insurance claims might mature and remain unpaid and the beneficiaries suffer should such revocation be made.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Affirmed. Opinion filed May 9, 1917.

CHARLES C. STILWELL, for appellants; E. JAY PINNEY, of counsel.

QUIN O'BRIEN, for appellees.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court, perpetually restraining the Grand Lodge of the Brotherhood of Railroad Trainmen, its officers and agents (defendants), from taking any action in the way of "revoking, suspending or cancelling" the charter of Square Deal Lodge No. 752, and from expelling, or attempting to expel from membership, and in any manner interfering with the membership or office of any member of said lodge, for any action of said lodge, or its members, in connection with certain charges made against, and the trial of one William J. Pinkerton, a member of said subordinate lodge.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

On October 28, 1912, W. G. Lee, the president of the Brotherhood, notified Pinkerton, who was the legislative representative of Square Deal Lodge No. 752, that on account of his disobedience of the rules of the Brotherhood, under the terms of section 154 of the constitution, in that he had circulated among lodges and members of the Brotherhood, communications pertaining to the then pending Federal Workmen's Compensation Law, which reflected improperly upon the conduct of President Lee and the president of the American Federation of Labor, and others, that he was removed. At the same time Square Deal Lodge No. 752 was also notified. On November 11, 1912, the subordinate lodge notified President Lee that they would contest the removal of Pinkerton, and recognize him until the action of the president could be overruled. Subsequently, on November 19th, President Lee notified the subordinate lodge that it was in his power to declare the lodge defunct if it failed to elect a successor to legislative representative, Pinkerton. On December 20, 1912, President Lee notified the lodge to proceed to try Pinkerton, on account of his alleged violation of article 154 of the constitution. Pursuant thereto, and in accordance with President Lee's order, charges were preferred and a trial had, and upon the report of the Trial Committee, which unanimously acquitted Pinkerton, being presented to the subordinate lodge, it was on February 9, 1913, approved by a vote of forty to one.

On February 7, 1913, President Lee wrote to the vice president, A. F. Whitney, who had been delegated to represent the defendants in prosecuting the Pinkerton case, as follows:

"It is my understanding that you will attend the next meeting of Lodge No. 752, at which the Trial Committee's report will be presented, and if Pinkerton should be exonerated, as he probably will, because

522 APPELLATE COURTS OF ILLINOIS.

Flowers et al. v. Grand Lodge of the B. of R. T., 205 Ill. App. 519.

I am of the opinion the Trial Committee was discriminately selected, I wish you to see to it that some brother appeals to this office immediately, as provided in the Constitution. It is not my intention to permit Pinkerton to escape punishment for the flagrant violation of the Constitution referred to in the charges, and in all probability it will be necessary to close Lodge No. 752, which I will have no hesitancy in doing unless they enforce the law."

On February 17, 1913, President Lee wrote to the officers and members of Square Deal Lodge No. 752, that unless the latter on Sunday, February 23, 1913, rescind the action taken at its meeting held February 9, 1913, in refusing to find Pinkerton guilty, "and does find brother Pinkerton guilty of said charges, and declares him expelled from the Brotherhood of Railroad Trainmen, the undersigned, as President of the Grand Lodge, will at once proceed to cite the lodge to show cause why its charter should not be revoked for failure to do so."

At the next meeting of the subordinate lodge, held on February 23, 1913, the lodge instructed the secretary to advise President Lee that it could not abide by his order to rescind the action of February 9, 1913; that it refused to act on the ground that it was contrary to section 145 of the constitution.

On February 24, 1913, President Lee wrote to the officers of the Square Deal Lodge No. 752, giving them notice to show cause on or before Friday, February 28, 1913, why the charter of the lodge should not be suspended or revoked, as provided for in section 42 of the constitution of the Grand Lodge.

On February 26, 1913, the bill of complaint in this cause was filed by William F. Flowers, George Finnegan and Fred C. Caliger, on behalf of themselves and all of the members of Square Deal Lodge No. 752, having been duly appointed a committee for such purpose

by the unanimous vote of Square Deal Lodge No. 752, at a meeting held February 23, 1913.

The bill of complaint was answered, a replication filed, and the cause referred to a master, who on October 23, 1914, reported that inasmuch as a large proportion of the members of Square Deal Lodge participate in the insurance features of the Brotherhood, and as President Lee stated as a witness that if the injunction had not been issued against him he would have forfeited the charter of Square Deal Lodge, the latter was entitled to an injunction restraining the forfeiture of the charter of Square Deal Lodge, to prevent the members of Square Deal Lodge from being deprived of certain insurance rights. All of the exceptions of the defendants to the master's report were overruled, and the report approved and confirmed, and subsequently a decree was entered making permanent and perpetual the injunction theretofore granted in this cause. The decree perpetually enjoins the Grand Lodge and its officers from interfering with the membership or office of any member of Square Deal Lodge No. 752, by reason of anything pertaining to or growing out of the charges made against and the trial of Pinkerton.

The evidence shows that the Brotherhood of Railroad Trainmen is a labor organization and conducts a fraternal insurance business, paying death and disability amounts, in accordance with its constitution and general rules.

The justice or injustice of the removal of Pinkerton as legislative representative is not a matter which the court, in this cause, may investigate, or of which it may take jurisdiction. The court here cannot adjudicate concerning the controversy between President Lee, on the one hand, and Pinkerton on the other, over the Brantley Workingmen's Compensation Act. *Brotherhood of Railway Trainmen v. Greaser,* 108 Ill. App. 598.

The critical question here is whether the threatened revocation of the charter of Square Deal Lodge No. 752 imperils the property rights of the members of that subordinate lodge.

It is contended by appellant that the court may not take ·jurisdiction until the appellees have sufficiently exhausted their remedies within the Brotherhood.

The claim of the appellees is that the injunction of the court is necessary to protect their insurance rights; that without the injunction the appellants will destroy the insurance rights of the individual members of the subordinate lodge. The 184 members of the subordinate lodge hold beneficiary certificates (aggregating $250,000) entitling each of them, or their beneficiaries, to various sums of money ranging from $500 to $1,500 in the event of the disability or death of the member insured. Insurance assessments which have been paid in by the complainants and other members of the Brotherhood of Railroad Trainmen have accumulated so that there is now in the treasury of the Grand Lodge a guarantee fund of over two million dollars. Each of the members of the subordinate lodge who has kept up his insurance has a substantive property right in that fund. If the charter of the subordinate lodge is revoked, as threatened and it is admitted by President Lee in his testimony that he would have revoked it had it not been for the injunction, then the right of each of the members of the subordinate lodge in the general fund is not only threatened, but so imperiled that it may easily become lost, or, from a practical standpoint, valueless. Appellees have asked that the appellants be enjoined from revoking the charter and from expelling or suspending any member of the subordinate lodge, by reason of anything connected with the Pinkerton matter.

Appellant, in its brief, states "that the only insurance is in the form of a written contract between the

Grand Lodge and each individual member of the order, by which the Grand Lodge promises to pay to the insured member, or his beneficiary, a specified sum, provided the member pays specified assessments'' and complies with the constitution and by-laws of the defendant. And the answer of each appellee to that is, having in mind the attitude of the president of the defendant Brotherhood, and his power, and what has transpired in conjunction with the Pinkerton matter, the court ought to enjoin the threatened revocation of their charter in order that their insurance rights may remain secure. Appellant claims that the contracts of insurance which the members of the subordinate lodge own will, to use the language of appellant's brief, ''remain unaffected by the revocation of the charter of Lodge No. 752.'' The difficulty seems to be in determining how (under the constitution and rules) the insurance rights of a former member of a defunct subordinate lodge (assuming its charter revoked) may be preserved, so that, without any fault on his part, neither he nor his beneficiaries may lose their rights.

Appellant contends that if the charter of Square Deal Lodge were revoked, President Lee could do one of two things: First, grant the members dispensations if they requested it, which would enable them to apply to some other lodge for admission (although such other lodge would have the right to reject their application); or second, transfer them upon their application to other lodges. It is to be observed, however, that the ''dispensation'' and ''transfer'' are not rights which the former members of a defunct lodge can enforce, but seem to be privileges only to be granted at the caprice, perhaps, of the president. It does not seem reasonable to allow the property rights of such members to be subjected to such uncertainty, especially without evidence of fault on their part.

Appellants contend that even if the appellees would

suffer damages as the result of the proposed action of the appellant Lee, it would, at most, give rise to an action at law. We are, however, of the opinion that the proposed threat, if carried out, would have given rise to damages which could not accurately be measured without complicated accountings and a multiplicity of suits, and that the case was, in consequence, one of which a court of equity might properly take cognizance. The question, then, squarely arises as to whether the proposed action of the appellant Lee would have been lawful, for, if unlawful, it presented a proper case for the action of a court of chancery. There is no doubt but what an organization such as the Brotherhood in question clearly has the right to make reasonable regulations governing the conduct of its members, and subordinate lodges, and in a proper case remove a member or revoke the charter of a subordinate lodge. In the present case, the appellant Lee threatened to revoke the charter of a subordinate lodge on account of its refusal to find Pinkerton guilty of certain charges upon which he had been tried and acquitted. In other words, the action threatened by Lee was the arbitrary revocation of a charter of a lodge on account of its failure to do his bidding. A careful examination of the Brotherhood's constitution fails to show that any such tyrannical authority has been invested or attempted to be invested in the president of the organization. The question of whether a rule conferring such autocratic authority upon an officer could be sustained as reasonable, in view of the unfortunate consequences which would naturally follow from its enforcement, is not properly before us, and we base our decision upon the fact that the trial of Pinkerton was a matter over which the subordinate lodge had jurisdiction, and there was no authority given to the president of the organization to discipline the lodge on account of the conclusions which it might reach in the matter.

Being of the opinion, as we are, that President Lee, under the constitution and rules of the organization, did not have the right to revoke the charter of Square Deal Lodge No. 752 because it refused to rescind its action of February 9, 1913, when by a vote of forty to one it found Pinkerton not guilty, and that a revocation of its charter would seriously imperil the insurance rights of its members, the writ of injunction was properly issued and made permanent. Where an organization, such as the defendant, undertakes to violate its constitution and rules, and by doing so injuriously affects the substantive insurance or property rights of its members, they are then entitled to seek relief in a court of equity.

It is claimed, also, that the bill of complaint is filed prematurely, inasmuch as the appellees did not appeal to the Grand Lodge. Such an appeal, however, to a tribunal at whose head is the president, and which tribunal only meets once in three years, is not a reasonable remedy, when meanwhile insurance claims may mature and remain unpaid and the beneficiaries suffer. The appellant has undertaken to distinguish the case of *Golden Star Lodge No. 1 v. Watterson,* 158 Mich. 696, and in some ways it is distinguishable. However, it very strongly supports the principles contended for by appellee and which are applicable and especially pertinent to the facts in the case at bar.

We are, therefore, of the opinion that the decree of the chancellor should be affirmed.

*Affirmed.*